## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Matthew Scarlett, individually and derivatively on behalf of Alcohol By Volume, Inc., | Case No.: _____ |
| Plaintiff, | |
| v. | **VERIFIED COMPLAINT** |
| Jonathan White, Cult of 8, Inc., and Gregory Ahn, | |
| Defendants. | |

---

Plaintiff Matthew Scarlett, individually and derivatively on behalf of Alcohol By Volume, Inc., states and alleges as follows:

## **INTRODUCTION**

1.     Plaintiff Matthew Scarlett ("Scarlett") has worked for several years with his business partner, Defendant Jonathan White ("White"), and colleague, Gregory Ahn ("Ahn"), to build a successful wine business with sales throughout the United States. Without warning or justification and in violation of Scarlett's rights and reasonable expectations and the rights of the business in which Scarlett and White were 50/50 partners, Ahn terminated Scarlett's employment and conspired with White to squeeze Scarlett out of the benefit of the valuable business interests he owns.  When Scarlett asked White to explain his behavior, White refused to even communicate with Scarlett about the reasons for this action or their obligations as business partners to protect the interests of their jointly-owned business.  Scarlett brings this action individually and

derivatively on behalf of Alcohol by Volume, Inc. to prevent defendants from effectively stealing their business and destroying their reputation in the industry.

**THE PARTIES**

2.      Plaintiff Matthew Scarlett ("Scarlett") is an individual residing in Edina, Minnesota.

3.      Alcohol By Volume, Inc. ("ABV") is a Nevada corporation.  As discussed in more detail below, ABV has not had an operational corporate office.  From company infancy in early 2012 through late 2015, corporate organizational documents identify ABV's principal office for the transaction of business to be in New Haven, Connecticut, at the former home address of Defendant Jonathan White.  When, in late 2015, White moved to California, Scarlett and White agreed to make the address of Scarlett's home in Richfield, Minnesota the principal corporate offices for the transaction of business of ABV.

4.      Defendant Jonathan White ("White") is an individual residing in in Palos Verdes Estates, California.  White previously resided in New Haven, Connecticut.

5.      Defendant Gregory Ahn ("Ahn") is an individual residing in Carmel, California.

6.      Defendant Cult of 8, Inc. ("CO8") is a California corporation with its headquarters and principal place of business located in Carmel, California.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this action based upon 28 U.S.C.

§ 1332(a)(1).  There is complete diversity of citizenship among the parties, and the

amount in controversy exceeds $75,000, exclusive of interest and costs.

8.      Venue in this district is proper under 28 U.S.C. § 1391(b)(2) because a

substantial part of the events giving rise to Plaintiff's claims occurred in Minnesota.

9.      CO8 does business in Minnesota, including the sale and distribution of

wine in the State of Minnesota, and placed and appointed Scarlett to handle sales for the

Midwest and western United States out of Scarlett's home office in Minnesota.  CO8 also

has business relationships with Minnesota companies and individuals, including Sage

Financial Services, with which CO8 has contracted to factor its accounts receivable.

10.      Individual defendants Jonathan White and Gregory Ahn have personally

spent time in Minnesota to, among other things, address with Scarlett various business

relationships and issues at the heart of this dispute and to meet with Minnesota-based

legal counsel (Fafinski, Mark & Johnson) to discuss business and legal issues relating to

the businesses.  They also routinely directed telephone and electronic communications to

Scarlett in Minnesota, where Scarlett's home base for business operations is located, as

well as to other Minnesota residents including Sage Financial Services and its owner.

## BACKGROUND

11.      Scarlett, age 35, has nearly ten years' experience in the wine industry.  He

has worked primarily in sales for several wine companies, including Don Sebastiani &

Sons, The Other Guys, and Cannonball Wine Company.

12.     Ahn was formerly one of the owners of Cannonball Wine Company. White, who knew Scarlett from their respective positions with The Other Guys, also knew Ahn.  In mid-2011, both Scarlett and White were recruited by Ahn to go to work for Cannonball Wine Company as Vice Presidents of Sales.

13.     During the period Scarlett and White worked for Cannonball Wine Company, they began discussions with Ahn about going into the wine business together.

14.     In approximately 2010, Ahn formed CO8 with family loans and an investment from a third party, called WTI Investments ("WTI"), based in Boulder, Colorado.  Ahn represented to Scarlett and White that WTI had made a loan to start-up CO8.  CO8 initially sold a brand of wine called Lamplighter and in approximately 2011 began also selling a brand of wine called Alias.  Ahn was and is the sole shareholder of CO8.

15.     CO8's operations, beginning in 2011, involved purchasing finished goods wine from Treasury Wine Estates and selling the wine in a limited number of states through distributors.

16.     In approximately December 2011, Ahn sold his ownership interest in Cannonball Wine Company.  Around the same time, both Scarlett and White resigned their employment with Cannonball to go into business with Ahn at CO8.  Scarlett and White were to be responsible for wine sales throughout the United States.  Generally, White, who then worked out of his home in New Haven, Connecticut, was responsible for sales for the eastern United States while Scarlett, who worked out of his home then in

4

Richfield, Minnesota, was primarily responsible for sales in the Midwest and western United States.

17.     In early 2012, Scarlett and White formed ABV.  Since inception, Scarlett and White have been equal 50% shareholders, the sole members of the Board of Directors, and officers of ABV.

18.     By 2013, CO8 was selling wine under several brand names, including "Bread & Butter," "Aviary," "Manifesto," and "Alias."

19.     The "Bread & Butter" trademark was registered and, as between ABV and CO8, is owned by ABV.

20.     ABV, rather than CO8, is also the rightful owner of rights to the "Aviary" trademark.  Ahn signed documents reflecting that the "Aviary" trademark was the intellectual property of ABV, but then improperly directed company counsel to register the trademark in the name of CO8 and never corrected this improper registration.

21.     In approximately September 2012, ABV acquired a 33% equity ownership interest in the company owning the rights to the "Manifesto" brand.  In September 2015, ABV made a further acquisition, giving it a total of 51% of the ownership of this company.

22.     The initial plan that Ahn, Scarlett, and White agreed to pursue was that each of them would become equal one-third owners/shareholders of both CO8 and ABV. In this way, each of them would have equal rights and equal financial return from what they expected to be a very rewarding wine business operated through these two companies and as equal owners each would have ongoing employment and a central role

in management and operations.  To ultimately accomplish this three-way equal ownership, Scarlett and White would have needed to obtain shares of CO8, which was owned 100% by Ahn, and Ahn would have needed to obtain shares of ABV, which was owned 50/50 by Scarlett and White.

23.     This planned ownership structure was never put in place.  Instead, and as discussed in more detail below, Ahn and White repudiated the planned structure and violated the fundamental assumption on which the intended ownership structure was based—that each of Ahn, Scarlett, and White would be equal owners and permanent employees in the combined businesses, sharing equally the financial rewards and participating equally in the operations of the businesses.  The actions by Ahn and White were, upon information and belief, taken for the purpose of keeping for themselves and to the exclusion of Scarlett the financial rewards of the businesses and in an effort to protect themselves from highly questionable business and personal conduct in which they had engaged.

24.     During the period 2012 through 2015, Scarlett and White worked together with Ahn to make CO8 a success.  Much of the success, including the sale of millions of dollars of wine throughout the United States, involved the sale of wine using the Bread & Butter trademark owned by ABV.

25.     CO8 has not made any royalty payments or other compensation to ABV for the use of the trademark.  Had CO8 been paying market rate royalties for use of the trademark, it would have had to pay millions of dollars to ABV.

26.     Scarlett, White, and ABV did not require contemporaneous payments of royalties for sale of Bread & Butter and Aviary labeled wine because of the understanding that each would become equal one-third owners in the combined businesses.  In the absence of this common understanding, ABV would not have allowed CO8 to utilize its trademark without an agreement to pay ABV royalties.

27.     In 2015, the relationship between Scarlett and White, on the one hand, and Ahn, on the other, began to fray when Scarlett and White became aware of questionable business dealings and misrepresentations by Ahn to important business participants.

28.     For example, WTI had provided early seed money to get CO8 off the ground.  While Ahn had told Scarlett and White that WTI had made a loan to CO8, Scarlett and White learned that Ahn had not documented the loan arrangement and that Ahn and WTI were contesting whether WTI held debt or equity in CO8 (an important issue to Scarlett and White as intended owners of CO8).

29.     WTI wanted to establish the equity ownership of CO8 it thought it had. Ahn claimed instead that WTI had made a loan, not an equity investment.  To try to satisfy WTI, Ahn in late 2014 agreed that CO8 would pay royalties on sales of the "Alias" brand of wine.

30.     When WTI requested company documents to see the sales to which it was entitled to royalties, Ahn sent documents to WTI that significantly misrepresented the actual sales.  Scarlett and White learned of this misrepresentation.

31.     In late 2014, Ahn began the process of inquiry into the possibility of purchasing a winery and vineyards in Carmel, California known then as Chateau Julien.

The winery was purchased by Ahn and/or CO8 in 2015 and is now known as Folktale
Winery and Vineyards.  Prior to the closing, Ahn, White, and Scarlett exhausted all
options available to them by way of soliciting outside investors, inclusive of friends,
family, and distributor partners, but were unable to raise the amount of outside funds
required by the bank for the loans.  Upon information and belief, Ahn engaged in
wrongful conduct by way of misrepresenting the source of funds to financial institutions.
Ahn misrepresented the source of approximately $250,000, through a scheme of diverting
funds through a local Monterey construction company and its owner, funds that came as
two 60-day loans from Scarlett and Scarlett's father, and double dipping accounts
receivable via a bridge loan through Sage Financial Services.  The latter resulted in a
default and default fee from Sage once it became apparent what Ahn had done.

32.     At one point, the owner of CO8's factoring company, Sage Financial
Services, based in Minneapolis, Minnesota, recommended that CO8 get its financial
reporting in order and engage in timely and accurate financial reporting.  Ahn, upon
information and belief, did not respond to this recommendation because of the concern
that it could reveal his questionable business and financial practices.

33.     Due to these and other events, Scarlett and White became very concerned
about their continued affiliation with Ahn.  Scarlett and White jointly engaged legal
counsel to address these issues and potentially negotiate a separation of their interests
from Ahn.  The parties, with counsel, met to discuss such a separation on December 18,
2015.

34.     Scarlett and White discussed the option of reporting Ahn's conduct to appropriate federal or state government authorities.

35.     On December 30, 2015, Scarlett and White jointly sent an email to Ahn informing him that they had hired an accountant from All In One Accounting, based in Eagan, Minnesota, at the recommendation of the owner of Sage Financial Services, to fly to the winery in California to inspect the assets and liabilities of CO8 and to clean up the company books.  This was a threat to Ahn because of the potential that it would reveal his questionable business and financial practices.

36.     From October through December 2015, Scarlett believed from everything that his business partner, White, told him, that he and White had the same interests and goals in mind, but it became apparent that White had decided to instead join forces with Ahn and to leave Scarlett as the odd man out.

37.     Shortly after several December 2015 email exchanges in which Scarlett and White expressed concern over Ahn's inappropriate and potentially fraudulent business practices, Ahn decided to divide and conquer by cutting a deal with White while casting Scarlett aside.

38.     Upon information and belief, White disclosed to Ahn the fact that Scarlett was considering reporting Ahn's conduct to appropriate government authorities.

39.     On December 31, 2015, Scarlett received written communication from Ahn stating that Scarlett's employment with CO8 was being summarily terminated, without cause or justification, and in direct repudiation of the plans of the three business

colleagues to be equal partners and participants in CO8. Scarlett's alcbyvol.com email account and his cell phone were immediately cut-off.

40.     Believing that White still viewed Scarlett to be his friend and business partner, Scarlett reached out to White to try to find out what Ahn was doing and the reasons for his unjustified actions.

41.     Instead of honestly disclosing to his business partner what was underway, White instead communicated back to Scarlett and their mutual attorney that Ahn had made some new deal with White and that White had signed a non-disclosure agreement that prevented him from telling either his business partner, Scarlett, or their mutual attorney what was going on, and effectively cut-off communications with Scarlett.

42.     On January 4, 2016, Ahn and White jointly sent email communications with a letter attached to customers and distributor partners throughout the United States making them aware of Scarlett's termination by CO8.

43.     While refusing to even tell his business partner the reasons for Ahn's actions or the nature of the new "deal" he had cut with Ahn to protect his own interests at Scarlett's expense, White has continued in business with Ahn and CO8, while Scarlett has been frozen out of any further involvement or financial compensation. In fact, White now represents himself in public as a "partner" of CO8.

44.     In addition, CO8 is, among other things, falsely portraying and advertising on its website that CO8 owns the Bread & Butter, Aviary, and Manifesto brands.

45.     White stood to gain financially at Scarlett's expense by continuing to work with Ahn, and would stand to increase his stature and financial reward by abandoning his business partner, Scarlett, and participating in Ahn's squeeze-out of Scarlett.

46.     Another likely reason for White's actions is that Ahn knew of White's dealings with his ex-wife in divorce proceedings and could have used that knowledge to effectively coerce White into cutting a deal with Ahn and to cooperate in getting rid of Scarlett.

47.     Beginning in approximately 2014, White was going through divorce proceedings with his now ex-wife in New Haven, Connecticut.  White felt it was to his advantage in his divorce proceeding to state that he was not a one-third owner of CO8.  Those financials would show that CO8 was selling millions of dollars of wine per year.  The financials would show significant value to be assigned to a one-third share, value which if owned by White would have required him to include CO8 among the marital assets to be divided with his ex-wife as part of a property settlement.  On the other hand, as an owner of only 50% interest in ABV, White could create the appearance of very little value since, despite owning the Bread & Butter trademark, ABV was not generating revenue from the use of it, and financially would tend to indicate very limited value of a marital asset.  This, of course, ignored the fact that ABV owned a valuable trademark for which it was not being compensated in the form of royalties or otherwise.

48.     Upon information and belief, White materially misrepresented and understated the true value of ABV and his 50% ownership interest in it, given ABV's ownership of the Bread & Butter trademark, and the sales and expected sales of wine

11

using that trademark, and thereby defrauded his ex-wife and potentially the court in
Connecticut in obtaining a marital separation property settlement with his ex-wife that
dramatically undervalued the actual value of his 50% interest in ABV and therefore the
amount received in settlement by his ex-wife.

49.     Upon information and belief, Ahn knew of this conduct by White and was
able to use it as leverage to get White to agree to what Ahn wanted and to abandon
White's duties to his business partner, Scarlett, and their business, ABV.

50.     Upon information and belief, White has not only gone in with Ahn to the
exclusion of Scarlett, his business partner, but White has also, upon information and
belief, created one or more wine companies (including a company called Jacobsen White
Corporation) alone, or with his new fiancé (after completing his highly questionable and
potentially fraudulent divorce agreement with his ex-wife) that will compete with ABV.
Upon information and belief, White and his fiancé or their new company have registered
multiple domain names for operation of a new wine business.

51.     White failed to provide Scarlett and ABV with any notice or opportunity to
pursue these new business opportunities.

52.     Neither ABV nor Scarlett approved or authorized White to pursue these
new business opportunities in the wine industry.

53.     White's actual or planned involvement in wine businesses other than ABV
constitutes a usurpation of corporate opportunities of ABV,

54.     With respect to the violation of the rights of ABV and injuries incurred by
ABV as a result of defendants' conduct, demanding the Board of Directors of ABV to

take action would be futile.  Among other things, Scarlett and White are the sole directors

and shareholders of ABV.  White, one of the architects and participants of the above-

actions to violate ABV's rights, would never authorize such legal action and thus it

would be impossible to get the majority of the Board to take corrective action.  White has

refused to even respond to the request that he explain his actions to Scarlett, suggesting

that he cannot do so because of a non-disclosure agreement with Ahn.  Therefore, the

claims of ABV are brought derivatively by Scarlett on behalf of ABV.

**SCARLETT'S DIRECT CLAIMS**

**COUNT ONE**

**Breach of Fiduciary Duty**
**(Against Defendant White)**

55.     Scarlett restates the foregoing paragraphs as though fully set forth herein.

56.     ABV is a closely-held, private corporation.  As a director of ABV, and as

one of two shareholders of ABV, White owes Scarlett fiduciary duties in his capacity as a

shareholder, officer, and director of ABV.  Said duties are equivalent to the duties

between partners and include, among other things, an obligation to exercise the utmost

candor, honesty, good faith, and loyalty.  By reason of these fiduciary duties, White

specifically owed and owes Scarlett the highest obligation of good faith and loyalty in the

management and administration of ABV's affairs, and may not put his own interests

before the interests of Scarlett for personal advantage.

57.     By the above-described actions and omissions, Defendant White breached

said fiduciary duties and has acted fraudulently, illegally, and/or in a manner unfairly

13

prejudicial and oppressive toward Scarlett, and has violated Scarlett's rights and

reasonable expectations in his capacity as a director and shareholder of ABV, and has

failed to act in good faith and exercise candor and loyalty.

58.    Scarlett has suffered and will continue to suffer damages as a result of

White's breaches of duty.

59.    As a result, Scarlett is entitled to an award of damages in an amount in

excess of $75,000 and/or injunctive and other equitable relief under the common law and

NRS § 78.650, or alternatively a court-ordered dissolution of ABV or appointment of a

receiver for ABV.

## COUNT TWO

### Equitable Relief under NRS § 78.650
### (Against Defendant White)

60.    Scarlett restates the foregoing paragraphs as though fully set forth herein.

61.    Under the common law and NRS § 78.650, this Court may order

appropriate equitable relief whenever, *inter alia*, those in control of the corporation have

violated NRS § 78.138 and/or have intentionally, fraudulently, or knowingly acted in

violation of law; have acted in violation of their fiduciary duties towards shareholders or

the corporation; or have acted in a manner unfairly prejudicial and oppressive toward a

shareholder in his capacity as shareholder of a private and/or closely-held corporation

such as ABV.

62.    As a direct and proximate result of the above-described willful, unlawful,

and oppressive acts, Scarlett is entitled to legal and equitable relief pursuant to common

law and NRS § 78.650, or alternatively a court-ordered dissolution of ABV or appointment of a receiver for ABV.

## COUNT THREE

### Aiding and Abetting Breach of Fiduciary Duty
**(Against Defendants Ahn and CO8)**

63.     Scarlett restates the foregoing paragraphs as though fully set forth herein.

64.     As a result of White's actions and omissions described herein, White, as director and shareholder of ABV, owed Scarlett fiduciary duties, and violated those fiduciary duties owed to Scarlett in his capacity as a shareholder of ABV.

65.     Defendants Ahn and CO8, by way of their personal and business relationships to both White and Scarlett, were aware of the existence and scope of fiduciary duties White owed to Scarlett.

66.     Despite this knowledge, and acting without privilege or justification, Ahn and CO8 knowingly, intentionally, and maliciously assisted, participated in, and encouraged White's actions and omissions that constitute his breaches of fiduciary duty. Such actions include Scarlett's termination and the freezing out of his management and ownership rights in furtherance of depriving Scarlett a central role in and financial reward from the Companies.

67.     Ahn and CO8's participation in White's breaches of his fiduciary duties owed to Scarlett have damaged and will continue to damage Scarlett, and they are liable to Scarlett in an amount to be determined at trial, but reasonably expected to exceed $75,000.

## COUNT FOUR

### Breach of Contract
### (Against Defendant White)

68.    Scarlett restates the foregoing paragraphs as though fully set forth herein.

69.    Scarlett and White entered into binding contracts, specifically including but not limited to ABV Bylaws and other corporate organizational documents that, among other things, require Scarlett and White, acting as the sole members of the Board of Directors and 50/50 shareholders, to equally manage and make decisions on behalf of and in the best interests of ABV.

70.    White has breached his contracts with Scarlett.

71.    As a result of White's breach of his contractual obligations owed to Scarlett, Scarlett has been and will continue to be damaged, and White is liable to Scarlett for damages to be determined at trial, but reasonably expected to exceed $75,000.

## COUNT FIVE

### Unjust Enrichment
### (Against All Defendants)

72.    Scarlett restates the foregoing paragraphs as though fully set forth herein.

73.    White, Ahn, and CO8 have taken substantial actions to benefit themselves at the expense of Scarlett and, in so doing, have cut Scarlett out of both ABV and CO8 and any potential for future success, financial reward, or business opportunities resulting from these Companies' operations.

74.     Defendants' actions towards Scarlett described herein were illegal and unjust, and Defendants have obtained and will continue to obtain a benefit at the expense of Scarlett that would be inequitable for them to retain.

75.     As a result of Defendants' actions, Defendants have been and will be unjustly enriched and Scarlett has been and will be unjustly damaged in an amount to be determined at trial, but reasonably expected to exceed $75,000.

## COUNT SIX

### Tortious Interference with Contract
### (Against Defendants Ahn and CO8)

76.     Scarlett restates the foregoing paragraphs as though fully set forth herein.

77.     Ahn and CO8 have been aware of the existence of the binding contracts between Scarlett and White, specifically including but not limited to the ABV Bylaws and other corporate organizational documents that, among other things, require Scarlett and White, acting as the sole members of the Board of Directors and 50/50 shareholders, to equally manage and make decisions on behalf of and in the best interests of ABV.

78.     Ahn and CO8 have intentionally interfered with these contracts in order to disrupt said contractual relationship between White and Scarlett.  Such actions include Scarlett's termination and the freezing out of his management and ownership rights in furtherance of depriving Scarlett a central role in and financial reward from the Companies.

79.     As described herein, White has breached his contracts with Scarlett.

80.     As a direct and proximate result of Ahn and CO8's tortious interference with those contracts, Scarlett has been damaged in an amount to be determined at trial, but reasonably expected to exceed $75,000.

## COUNT SEVEN

### Tortious Interference with Economic Advantage
### (Against Defendants Ahn and CO8)

81.     Scarlett restates the foregoing paragraphs as though fully set forth herein.

82.     As a 50% shareholder and director of ABV, Scarlett had a reasonable expectation of economic advantages attendant with those shares and positions.

83.     By way of their personal and professional relationship to White and Scarlett, Ahn and CO8 were aware of Scarlett's reasonable expectations and contractual rights that constituted Scarlett's economic advantage.

84.     Ahn and CO8, without privilege or justification, intentionally, knowingly, and maliciously interfered with and caused a breach of Scarlett's established prospective economic advantages.  Such actions include Scarlett's termination and the freezing out of his management and ownership rights in furtherance of depriving Scarlett of a central role in and financial rewards from the Companies.

85.     As a direct and proximate result of Ahn and CO8's tortious interference with Scarlett's economic advantages, Scarlett has suffered past and continuing damage in an amount to be established at trial but reasonably believed to exceed $75,000.

## COUNT EIGHT

## Unlawful Retaliation under Cal. Labor Code § 1102.5 and/or Minn. Stat. § 181.932
### (Against CO8)

86.     Scarlett restates the foregoing paragraphs as though fully set forth herein.

87.     Scarlett was an employee of CO8.

88.     During his employment, Scarlett and White became aware of actual and/or potentially fraudulent activity regarding Ahn's actions in connection with the business of CO8.  Scarlett had and continues to have a reasonable basis for believing the fraudulent nature of Ahn's actions.

89.     Scarlett discussed this activity with White, a senior sales employee of CO8, and discussed with White the option of reporting and disclosing information regarding the fraudulent activity to governmental authorities.

90.     Upon information and belief, White informed Ahn about the discussion with Scarlett regarding the disclosure of the fraudulent activity to appropriate governmental or law enforcement agencies.

91.     Scarlett, as an employee of CO8, engaged in protected activity when he discussed with White and considered the option of disclosing this information, and, further, sought to have an accountant evaluate CO8's financial records.

92.     Scarlett was summarily terminated from CO8 thereafter.

93.     Scarlett's efforts to expose and discuss reporting the actual and/or potentially fraudulent activity were a substantial motivation for his termination.  CO8's decision to terminate Scarlett was adverse and retaliatory, and is without justification.

CO8's termination of Scarlett violated Cal. Labor Code § 1102.5, or, in the alternative, Minn. Stat. § 181.932, and applicable state and common law.

94.      As an actual and proximate result of CO8's unlawful conduct, Scarlett has lost and will continue to lose wages, benefits, and has incurred other expenses, damaging Scarlett in an amount to be determined at trial, reasonably believed to be in excess of $75,000, along with costs and attorneys' fees.

## COUNT NINE

### Declaratory Judgment
**(Against Ahn)**

95.      Scarlett restates the foregoing paragraphs as though fully set forth herein.

96.      An actual and justiciable controversy has arisen and now exists between the parties.

97.      ABV's corporate documents establish that ownership of ABV is split 50/50 between Scarlett and White.  Despite assertions to the contrary, Defendant Ahn has at no point had any proprietary or ownership interests or rights in ABV.  Upon information and belief, Ahn nonetheless claims to be an owner and/or shareholder of ABV.

98.      Scarlett, as a one-half-owner, 50% shareholder, officer, and director of ABV, is entitled to a declaration establishing the rights of the parties with respect to ownership of ABV, specifically including a declaration providing that Ahn has no ownership interests or rights in ABV.

## SCARLETT'S DERIVATIVE CLAIMS ON BEHALF OF ABV

## COUNT TEN

### Breach of Fiduciary Duty
**(Brought Derivatively on behalf of ABV against Defendant White)**

99.    Scarlett restates the foregoing paragraphs as though fully set forth herein.

100.    As a director, officer, and shareholder of ABV, White owes fiduciary duties to the corporation and the shareholders to exercise candor, good faith, and loyalty, and to act with good faith and fair dealing in a manner reasonably believed to be in the best interests of the corporation and the shareholders.

101.    By the above-described actions and omissions, Defendant White has acted fraudulently, knowingly, and/or in violation of law and the fiduciary duties owed to the corporation, by, among other things, acting in bad faith and putting his own interests ahead of ABV's through self-dealing negotiations and transactions with Ahn and CO8.

102.    As a direct and proximate result of the above-described willful and unlawful acts, ABV has been and will continue to be damaged in an amount to be proven at trial but reasonably believed to exceed $75,000.

## COUNT ELEVEN

### Usurpation of Corporate Opportunity in Breach of the Duty of Loyalty
**(Brought Derivatively on behalf of ABV against Defendant White)**

103.    Scarlett restates the foregoing paragraphs as though fully set forth herein.

104.    Upon information and belief, White has acted to develop and pursue business opportunities that are reasonably within the scope of ABV's current business— or a reasonable extension thereof—without providing ABV an opportunity to pursue such

business.  In addition, upon information and belief, White has used his position at ABV to develop and pursue these opportunities outside of ABV.

105.    As a direct result of such action, the value of ABV has been damaged in an amount to be proven at trial, reasonably expected to exceed $75,000.

## COUNT TWELVE

### Aiding and Abetting Breach of Fiduciary Duty
**(Brought Derivatively on behalf of ABV against Defendants Ahn and CO8)**

106.    Scarlett restates the foregoing paragraphs as though fully set forth herein.

107.    As a director, officer, and shareholder of ABV, White owed ABV fiduciary duties.

108.    As described herein, as a result of White's actions and omissions, White violated the fiduciary duties owed to ABV.

109.    Ahn and CO8, by way of their personal and business relationships to both White and Scarlett, were aware of the fiduciary duties White owed to ABV.

110.    Despite this knowledge, and acting without privilege or justification, Ahn and CO8 knowingly, intentionally, and maliciously participated and encouraged White's actions and omissions that constitute his breach of fiduciary duty to ABV.

111.    Ahn and CO8's participation in White's breach of his fiduciary duties owed to ABV have damaged and will continue to damage ABV in an amount to be determined at trial and reasonably believed to be in excess of $75,000.

## COUNT THIRTEEN

### Trademark Infringement/Unfair Competition
### (Brought Derivatively on behalf of ABV against CO8)

112.    Scarlett restates the foregoing paragraphs as though fully set forth herein.

113.    ABV, and not CO8, is the owner of U.S. Trademark Registration No. 4,850,567 for the mark Bread & Butter in connection with the sale of wine.

114.    The mark Bread & Butter is inherently distinctive, strong, famous, and deserving of a broad scope of protection.

115.    ABV's registration of the mark Bread & Butter is valid, subsisting, and conclusive evidence of the validity of the mark, ABV's ownership of the mark, and ABV's exclusive right to use the mark in commerce or in connection with the goods and services specified therein.

116.    Defendant CO8 has and continues to infringe on ABV's Bread & Butter mark by selling, offering for sale, distributing, and advertising products under the Bread & Butter name without full and proper consent from ABV.

117.    CO8's use of the Bread & Butter trademark is likely to cause confusion, cause mistake, and/or deceive consumers and the public with respect to the goods and services.  For example, CO8 has, among other things, falsely portrayed and advertised on its website that CO8 owns the Bread & Butter, Aviary, and Manifesto brands.

118.    Defendant CO8 will continue to infringe ABV's Bread & Butter mark and cause irreparable harm unless enjoined by this Court.

119.   CO8's actions constitute a violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.  Upon information and belief, CO8's violation is and has been willful, intentional, and in conscious disregard of ABV's rights.

120.   CO8's actions also result in a violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  Upon information and belief, CO8's violation is and has been willful, intentional, and in conscious disregard of ABV's rights.

121.   Defendant CO8's actions and omissions constitute a violation of state and common law trademark rights and unfair competition.  CO8's unfair competition and activities in violation of state and common law trademark rights to the mark Bread & Butter have been willful, intentional, and in conscious disregard of ABV's rights.

122.   As a direct result of CO8's unlawful conduct, ABV has and will continue to sustain substantial loss, damage, and irreparable injury.  As a result of CO8's violation of Sections 32 and 43(a) of the Lanham Act, and applicable state and common law, ABV is entitled to recover damages in an amount to be determined at trial and reasonably believed to be in excess of $75,000, as well as attorneys' fees and costs.  ABV is further entitled to all other remedies set forth in Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116 and 1117.  ABV is also entitled to recover CO8's profits earned as a result of its violation of Sections 32 and 43(a) of the Lanham Act.  ABV is further entitled to preliminary and permanent injunctive relief enjoining Defendant CO8 from further and continuing violation of Sections 32 and 43(a) of the Lanham Act.

## COUNT FOURTEEN

### Unjust Enrichment
**(Brought Derivatively on behalf of ABV against All Defendants)**

123.    Scarlett restates the foregoing paragraphs as though fully set forth herein.

124.    Defendants have made revenue from and continue to derive pecuniary gain through their unauthorized use of ABV's name, substantial portions of ABV's Bread & Butter and Aviary trademarks, and/or unauthorized derivative work without ABV's authorization or permission.

125.    Defendants have been, and continue to be unjustly enriched by ABV's Bread & Butter and Aviary trademarks, while ABV has been unjustly harmed by Defendants' actions.  Defendants' actions towards ABV described herein are illegal and unjust, and Defendants have obtained and will continue to obtain a benefit at the expense of ABV that would be inequitable for them to retain.

126.    ABV has sustained and will continue to sustain injury, loss, and damages in excess of $75,000 as a result of Defendants' actions and is entitled to relief.

## COUNT FIFTEEN

### Tortious Interference with Prospective Economic Advantage
**(Brought Derivatively on behalf of ABV against Defendants Ahn and CO8)**

127.    Scarlett restates the foregoing paragraphs as though fully set forth herein.

128.    ABV has prospective contractual and/or business relations by way of its ownership of the Bread & Butter and Aviary trademarks through licensing or other contractual relationships that will benefit ABV financially.  In addition, ABV has prospective business relationships with various companies, including, among others, T.

Elenteny Imports and DH Wine Compliance, relating to potential trademark and alcohol licensures, and/or registration and related activities for ABV to sell or license the sale of wine under the Bread & Butter and Aviary labels.

129.    ABV reasonably expects to generate income through such prospective relationships.

130.    Defendants, upon information and belief, knew that ABV had and has such prospective relationships and reasonable expectations.

131.    Ahn and CO8 have intentionally interfered with ABV's prospective relationships by using the Bread & Butter and Aviary trademarks to sell wine throughout the United States without authorization or compensation to ABV.

132.    There is substantial and immediate threat that Ahn and CO8, armed with ABV's proprietary and trademarked material, will keep clients and/or prospective clients from entering into agreements or renew agreements or business relationships with ABV, keeping ABV from enjoying the use of the Bread & Butter and Aviary trademarks.

133.    As a result of Ahn and CO8's tortious interference with ABV's prospective business relations with existing clients, ABV has suffered and will continue to suffer damages in an amount to be proven at trial, reasonably believed to be in excess of $75,000.

134.    ABV is also entitled to preliminary and permanent injunctive relief to protect ABV from irreparable harm caused and threated to be caused by Ahn and CO8's interference with ABV's prospective client relationships.

## COUNT SIXTEEN

### Violation of Nevada Deceptive Trade Practices Act
### (Brought Derivatively on behalf of ABV against Defendants Ahn and CO8)

135.    Scarlett restates the foregoing paragraphs as though fully set forth herein.

136.    CO8 and Ahn have violated the Nevada Deceptive Trade Practices Act, including NRS § 598.0915 and applicable state and common law, because, in the course of their business and/or occupation, they have knowingly made false representations as to the source, sponsorship, approval or certification, origin, and/or ownership of the Bread & Butter trademark, and further, have made other false representations in transactions involving goods or services regarding the Bread & Butter trademark.

137.    Upon information and belief Defendants have caused and are likely to cause similar false representations on an ongoing basis because Defendants, among other things, are selling wine using the Bread & Butter trademark and using the name Alcohol By Volume without proper authority from ABV.

138.    As the direct and proximate result of CO8 and Ahn's conduct, ABV suffered, and will continue to suffer, monetary damages and irreparable injury to its business, reputation, and goodwill, and is entitled to damages in an amount to be proven at trial, reasonably believed to be in excess of $75,000, as well as costs and attorneys' fees.

## COUNT SEVENTEEN

## Declaratory Judgment
### (Brought Derivatively on behalf of ABV against all Defendants)

139.    Scarlett restates the foregoing paragraphs as though fully set forth herein.

140.    An actual and justiciable controversy has arisen and now exists between the parties.

141.    ABV's registration of the mark Bread & Butter is valid, subsisting, and conclusive evidence of ABV's, and not CO8's, ownership of the mark, and ABV's right to use the mark in commerce or in connection with the goods and services specified herein, to the exclusion of CO8.

142.    ABV is entitled to a declaration providing that ABV, and not CO8, is the owner of the Bread & Butter trademark, and, further, temporary and permanent injunctive relief preventing CO8, Ahn, and/or White, or anyone acting with or in concert with them, from using the Bread & Butter trademark without a royalty agreement with ABV, and, further, from using the name Alcohol By Volume in any way in CO8's business.

143.    ABV is entitled to a declaration that ABV, and not CO8, is the owner of the Aviary trademark, and, further, temporary and permanent injunctive relief preventing CO8, Ahn, and/or White, or anyone acting with or in concert with them, from using the Aviary trademark without a royalty agreement with ABV.

## DEMAND FUTILITY

144.   Scarlett restates the foregoing paragraphs as though fully set forth herein.

145.   Scarlett owns and has continuously owned stock in ABV during the period of wrongdoing alleged herein.

146.   The claims brought herein do not constitute a collusive action to confer jurisdiction that the Court would otherwise lack.

147.   Each derivative claim asserted herein is brought pursuant to Fed. R. Civ. Pro. 23.1 and/or NRS § 41.520.  Demand by Scarlett on the ABV Board of Directors to take the actions set forth herein would be futile, and demand for such actions is therefore excused.  The ABV Board of Directors consists solely of Scarlett and White, and each is a 50% shareholder.  White faces substantial likelihood of personal liability and has a material interest in the subject of the demand to pursue claims against White and his business associates, CO8 and Ahn, due to his extensive involvement in the CO8 dealings. Moreover, White has refused to even talk to or otherwise communicate with Scarlett. Thus, demand would be futile and is thereby excused.

## DEMAND FOR JURY TRIAL

148.   Scarlett demands a trial by jury on all claims triable to a jury.

## PRAYER FOR RELIEF

WHEREFORE, Scarlett prays for relief as follows:

1.   An award of damages against all defendants in favor of Scarlett in amounts in excess of $75,000;

2.      An award of damages against all defendants in favor of ABV in amounts in excess of $75,000;

3.      Declaratory relief specifically including but not limited to a declaration that Ahn has no ownership interest or stock in ABV;

4.      Temporary and/or permanent injunctive relief, including but not limited to an injunction preventing defendants from using the ABV name and the Bread & Butter and Aviary trademarks;

5.      An award of costs, disbursements, and attorneys' fees; and

6.      Such other relief the Court deems just and reasonable.

**ANTHONY OSTLUND
BAER & LOUWAGIE
P.A.**

Dated:  August 30, 2016                    By:*/s/ Randy G. Gullickson*
                                       Joseph W. Anthony (#0002872)
                                       Randy G. Gullickson (#0185607)
                                       Laura A. Farley (#0397455)
3600 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN  55402
Telephone:  612-349-6969
janthony@anthonyostund.com
rgullickson@anthonyostund.com
lfarley@anthonyostund.com

**ATTORNEYS FOR PLAINTIFF**

## <u>VERIFICATION</u>

I, Matthew Scarlett, being duly sworn, under penalty of perjury depose and say that: I am

the Plaintiff in the above action; I have read the foregoing Verified Complaint and know

the contents thereof; and the same is true to my own knowledge, except as to those

allegations made upon information and belief, which I believe to be true.

Matthew Scarlett

Signed and sworn to before me
this 30ᵗʰ day of August, 2016

Notary Public



CHRISTOPHER ALBERT KING
NOTARY PUBLIC - MINNESOTA
MY COMMISSION EXPIRES 01/31/2020