UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Matthew Scarlett,

        Plaintiff,                    Court File No. 16-cv-2925 (JRT/LIB)

v.

                    **REPORT AND RECOMMENDATION**

Jonathan White, et al.

        Defendants.

This matter came before the undersigned United States Magistrate Judge pursuant to a general referral made in accordance with the provisions of 28 U.S.C. § 636(b)(1)(B), and upon Defendants' Motion to Dismiss or Transfer, [Docket No. 9]. A hearing on the Motion was held on January 23, 2017, and the matter was thereafter taken under advisement. ([Docket No. 32]).

For the reasons set forth below, the Court recommends that Defendants' Motion to Dismiss or Transfer, [Docket No. 9], be **GRANTED**.

## I.  BACKGROUND AND STATEMENT OF FACTS

Plaintiff, Matthew Scarlett, and Defendant, Jonathan White, met when they both worked for The Other Guys, a California-based wine distributor. (Compl., [Docket No. 1], 3-4; First White Dec., [Docket No. 12], 4). In 2011, Defendant, Gregory Ahn, recruited Scarlett and White to work for Cannonball Wine Company which was a California company Ahn owned. (Compl., [Docket No. 1], 4; First White Dec., [Docket No. 12], 4; First Ahn Dec., [Docket No. 13], 3). In early 2012, Scarlett and White both resigned from Cannonball, and they then went to work for Defendant, Cult of 8, Inc. ("Cult of 8"). (Compl., [Docket No. 1], 4; First White Dec., [Docket No. 12], 1). Cult of 8 was a California corporation which Ahn had formed in 2010. (First Ahn

Dec., [Docket No. 13], 1). According to Scarlett, Ahn represented that he had formed Cult of 8 with family loans and a loan from WTI Investments which was a third party based in Colorado. (Compl., [Docket No. 1], 4).

In February 2012, Scarlett and White formed Alcohol by Volume, Inc. ("ABV"), a Nevada corporation. (Id. at 2, 5; First White Dec., Exh. C, [Docket No. 12-1], 24). The Articles of Incorporation identified ABV's principal office for the transaction of business as White's home address in New Haven, Connecticut. (Compl., [Docket No. 1], 2; First White Dec., [Docket No. 12], 2; Id. at Exh. A, [Docket No. 12-1], 1). Scarlett asserts that in 2015, when White moved to California, White and Scarlett agreed to make the principal office for the transaction of ABV's business Scarlett's home address in Richfield, Minnesota. (Compl., [Docket No. 1], 2). White denies agreeing to this and further denies agreeing to the designation of Minnesota as ABV's principal place of business. (First White Dec., [Docket No. 12], 2-3).

Scarlett alleges that he, White, and Ahn agreed that Ahn would obtain shares of ABV while Scarlett and White would obtain shares of Cult of 8. The anticipated result of the foregoing alleged agreement would be that each would become a one-third owner and shareholder in both companies. (Compl., [Docket No. 1], 5-6). Accordingly, the companies' businesses became intertwined. ABV registered and owned the trademarks "Bread & Butter" and "Aviary." (Id. at 5). By 2013, Cult of 8 sold wine under several brand names, including Bread & Butter and Aviary. (Id.). Scarlett alleges that Cult of 8 has not paid royalties or other compensation to ABV for use of the Bread & Butter trademark. (Id. at 6). In addition, by 2015, ABV had acquired a majority ownership in a company which owned the rights to the "Manifesto" brand. (Id. at 5). From 2012 through 2015, Scarlett continued to work with Ahn and White. (Id. at 6).

At this point, the parties' versions of events significantly diverge. Scarlett alleges that in 2015, he and White's relationship with Ahn became strained when they started questioning some of Ahn's business dealings. (Id. at 7). For example, Scarlett alleges that he and White learned that Ahn had not documented the loan arrangement with WTI for the start-up of Cult of 8 and that WTI claimed it had made an equity investment rather than a loan. (Id.). Scarlett further asserts that additional suspicious actions by Ahn made Scarlett and White increasingly concerned about continuing their relationship with Ahn, to the point that Scarlett and White jointly retained counsel to possibly negotiate a separation of their interests from Ahn's. (Id. at 8).

In December 2015, Scarlett, White, and Ahn met, with counsel, to discuss separation. (Id.). Scarlett contends that he and White sent Ahn an email stating that they had hired an accountant from All In One Accounting, a Minnesota-based firm, at the recommendation of the owner of Sage Financial Services ("Sage"), Cult of 8's Minnesota-based factoring company, to inspect Cult of 8's liabilities, assets, and records. (Id. at 8-9). Scarlett alleges that shortly thereafter, White told Ahn that Scarlett was considering reporting Ahn's conduct to government authorities, and Ahn and White then "cut a deal." (Id. at 9).

On December 31, 2015, Ahn informed Scarlett in writing that Scarlett's employment with Cult of 8 was terminated. (Id.). Scarlett asserts that when he asked White for more information, White cut off communication with Scarlett. (Id. at 10). Ahn and White also sent emails to customers and distributor partners across the United States informing them of Scarlett's termination. (Id. at 10).

For their part, White, Ahn, and Cult of 8 (collectively, "Defendants") assert that in late 2015, Scarlett "began interfering with Cult of 8's relationships with its financing company and partners." (Elsass Dec., Exh. A, [Docket No. 11-1], 11). Defendants further allege that Scarlett

"secretly contacted Cult of 8's production partners to directly or indirectly discourage the partners from conducting further business with Mr. Ahn and/or Cult of 8." (Id. at 12). In addition, Defendants offer alternate reasons for Scarlett's termination, including Scarlett's excessive drinking, declining sales, unprofessional behavior, illegal activities, and attempted disruption of Cult of 8's business relationships. (Reply, [Docket No. 22], 10-12).

On August 11, 2016, Ahn, White, and Cult of 8 filed suit in California state court against Scarlett, ABV, and 25 John Doe and Jane Doe defendants. (Elsass Dec., Exh. A, [Docket No. 11-1], 8). Ahn and White sought declaratory judgment declaring that Ahn, White, and Scarlett each own one-third of ABV and one-third of Cult of 8. (Id. at 8, 12). In addition, Cult of 8 brought a claim of breach of fiduciary duty against Scarlett. (Id. at 13). Cult of 8 and Ahn also brought an alternative claim of fraud in the inducement against Scarlett and ABV. (Id. at 14). Ahn, White, and Cult of 8 sought recission of the transfer of certain ABV trademarks, compensatory damages, special damages, and punitive damages. (Id. at 15). Scarlett was served with the summons, complaint, and related papers in the California state court lawsuit on September 20, 2016. (Yates Dec., [Docket No. 15], 1-2).

Meanwhile, on August 30, 2016, Scarlett filed the present lawsuit in this Court. (Compl., [Docket No. 1]). Based on his allegations, as set forth above, Scarlett brings (1) a claim of breach of fiduciary duty against White, (2) a claim for equitable relief against White, (3) a claim of aiding and abetting breach of fiduciary duty against Ahn and Cult of 8, (4) a claim for breach of contract against White, (5) a claim of unjust enrichment against all Defendants, (6) a claim of tortious interference with contract against Ahn and Cult of 8, (7) a claim of tortious interference with economic advantage against Ahn and Cult of 8, and (8) a claim of unlawful retaliation under the relevant California and/or Minnesota state statutes against Cult of 8. (Id. at 13-20).

Scarlett also seeks declaratory judgment stating that Ahn has no ownership interest in or rights to ABV. (Id. at 20). Additionally, Scarlett seeks to bring the following claims derivatively on behalf of ABV:  breach of fiduciary duty against White, usurpation of corporate opportunity in breach of the duty of loyalty against White, aiding and abetting breach of fiduciary duty against Ahn and Cult of 8, trademark infringement/unfair competition against Cult of 8, unjust enrichment against all Defendants, tortious interference with prospective economic advantage against Ahn and Cult of 8, and violation of the Nevada Deceptive Trade Practices Act against Ahn and Cult of 8. (Id. at 21-27). Further, in his derivative capacity, Scarlett seeks declaratory judgment stating that ABV is the owner of the Bread & Butter and the Aviary trademarks, injunctive relief, money damages, declaratory relief, and costs and attorney's fees. (Id. at 28-30).

On September 22, 2016, Scarlett filed a Notice of Removal in the California state court, removing that case to the United States District Court for the Northern District of California. (Elsass Dec., Exh. A, [Docket No. 11-1], 1).

On September 28, 2016, Defendants filed in this Court the present Motion to Dismiss or, in the Alternative, to Transfer this case to the United States District Court for the Northern District of California. ([Docket No. 9]). In their accompanying Memorandum in Support, Defendants argued that the first-filed rule and improper venue compel dismissal or transfer of this case or, in the alternative, the Court should dismiss based on lack of personal jurisdiction. (Mem. in Supp., [Docket No. 10], 1). In support, Defendants filed Declarations from Ahn; White; Douglas Elsass, one of Defendants' attorneys; and Bob Yates, the process server in the California case, as well as exhibits supporting the Declarations. (Elsass Dec., [Docket No. 11]; First White Dec., [Docket No. 12]; First Ahn Dec., [Docket No. 13]; Yates Dec., [Docket No. 15]).

On October 19, 2016, Scarlett filed his Memorandum in Opposition, challenging Defendants' assertions and arguments. ([Docket No. 19]). In support, he filed Declarations from himself and from a California attorney who stated her general belief that the current time to trial in the relevant division of the California federal court is likely to be longer than in recent history. (Scarlett Dec., [Docket No. 20]; Gilbert Dec., [Docket No. 21]). Defendants filed their Reply on November 2, 2016, along with additional Declarations in support. (Reply, [Docket No. 22]; Lewis Dec., [Docket No. 23]; Sutherland Dec., [Docket No. 24]; Hamilton Dec., [Docket No. 25]; Johnson Dec., [Docket No. 26]; Second Ahn Dec., [Docket No. 27]; Second White Dec., [Docket No. 28]).

On December 5, 2016, Chief Judge John R. Tunheim issued an Order referring the Motion to Dismiss, or in the Alternative to Transfer, [Docket No. 9], to the undersigned. [Docket No. 29].

On January 19, 2017, Defendants filed a Second Declaration of Douglas L. Elsass, to update the Court on the proceedings in the California federal case. The information shows that Scarlett has filed in that case a motion to dismiss for failure to state a claim upon which relief can be granted, a motion to transfer the case, and a motion to temporarily stay discovery, for which the California federal court has set a hearing date of April 6, 2017. (Second Elsass Dec., Exh. A, [Docket No. 31-1], 6-8). The parties have also agreed to participate in private mediation after the California federal court's rulings on those motions. (Id. at 7). In addition, Ahn, White, and Cult of 8 have served their first requests for production on Scarlett in the California federal case. (Second Elsass Dec., Exh. E, [Docket No. 31-1], 38).

## II.     STANDARDS OF REVIEW

"[A] plaintiff 'should not be' allowed 'to litigate the same issue at the same time in more than one federal court.' Further, dismissal of duplicative claims comports with our long-standing 'general principle' of 'avoid[ing] duplicative litigation." Blakely v. Schlumberger Tech. Group, 648 F.3d 921, 932 (8th Cir. 2011).

> "Generally, the doctrine of federal comity permits a court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district." Consistent with this principle, courts apply the "first to file" or "first-filed" rule in appropriate circumstances. "To conserve judicial resources and avoid conflicting rulings, the first-filed rule gives priority, for purposes of choosing among possible venues when parallel litigation has been instituted in separate courts, to the party who first establishes jurisdiction." Although called a rule, it "is not intended to be rigid, mechanical, or inflexible, but should be applied in a manner serving sound judicial administration." The rule "will not be applied where a court finds 'compelling circumstances' supporting its abrogation." Courts are alert to two "red flags" that suggest such compelling circumstances exist: first, if the party that filed the first suit was "on notice" that the other party intended to file its lawsuit imminently, and second, if the first lawsuit was an action for declaratory judgment, which "may be more indicative of a preemptive strike than a suit for damages or equitable relief."

Everest Indem. Ins. Co. v. Ro, No. 16-cv-1064 (JNE/HB), 2016 WL 4007578, *4 (D. Minn. July 26, 2016) (citations omitted).

## III.    DEFENDANTS' MOTION TO DISMISS OR IN THE ALTERNATIVE TRANSFER, [Docket No. 9]

The first-filed rule has been described by the Eighth Circuit as providing that "in cases of concurrent jurisdiction, the first court in which jurisdiction attaches has priority to consider the case." See, NW. Airlines, Inc. v. Am. Airlines, Inc., 989 F. 2d 1002, 1005 (8th Cir. 1993) (emphasis added). Based on the phrase "in cases of concurrent jurisdiction," Scarlett asserted at the January 23, 2017, Motion Hearing that it is improper for this Court to decide whether or not to apply the first-filed rule without initially determining that it has personal jurisdiction over

Defendants or finding that Defendants waived their personal jurisdiction argument by asserting the first-filed rule. (Jan. 23, 2017, Motion Hearing, Digital Record, 10:25-26, 10:47-49). Defendants, on the other hand, maintained that personal jurisdiction is <u>not</u> a threshold determination and that if the first-filed rule applies and this Court transfers the present case, the Court need not decide Minnesota personal jurisdiction and venue issues. (<u>Id.</u> at 10:13-15, 10:47-48).

First, the Court again notes the Eighth Circuit's statement in <u>NW. Airlines, Inc.</u> that the first-filed rule holds that "'the first court in which jurisdiction attaches has priority to consider the case.'" 989 F.2d at 1005 (quoting <u>Orthmann v. Apple River Campground Inc.</u>, 765 F.2d 119, 121 (8th Cir. 1985)). Thus, the question of whether this Court has personal jurisdiction would have no practical effect on whether the California federal court has priority to consider the case, if the California case was the first case filed in a court having jurisdiction over the matter and there were no other circumstances warranting departure from the first-filed rule. None of the parties in the present case dispute the jurisdiction of the California federal court.

In addition, although case law addressing whether personal jurisdiction is a threshold consideration for the first-filed rule is scarce, the Eighth Circuit spoke to this issue in <u>Orthmann v. Apple River Campground, Inc.</u>, 765 F.2d 119 (1985). <u>Orthmann</u> involved a tort action first filed in federal district court in Minnesota in April 1983. <u>Id.</u> at 120. In July of that year, the plaintiff filed an identical action in federal court in Wisconsin. <u>Id.</u> In October 1983, the Minnesota federal district court dismissed the Minnesota case for lack of personal jurisdiction over the defendants, a ruling the plaintiff appealed to the Eighth Circuit. <u>Id.</u> Similarly, when the Wisconsin federal district court dismissed the Wisconsin case under Federal Rule of Civil Procedure 12(b)(6), the plaintiff appealed that dismissal to the Seventh Circuit. <u>Id.</u>

The Seventh Circuit largely reversed the dismissal and remanded the case for further proceedings. Id. at 120-21. Thus, when the Eighth Circuit considered the appeal from the dismissal of the Minnesota case, the Eighth Circuit took into account the first-filed rule. Id. at 121. Although the Eighth Circuit repeated the language stating that the first-filed rule applies "where two courts have concurrent jurisdiction," the Court also noted the Eleventh Circuit's "similar" statement that "'[i]n the absence of compelling circumstances, the court initially seized of a controversy should be the one to decide the case.'" Id. The Eighth Circuit concluded:

> [T]he federal comity doctrine is best served in this case by dismissing [the] action in Minnesota district court. Although he filed his action first in Minnesota, the decision by the Seventh Circuit means that the controversy is now further developed in the Wisconsin district court. We note that while none of the parties question whether the Wisconsin court has personal jurisdiction, the parties vigorously dispute whether there is personal jurisdiction over the defendants in Minnesota. In the absence of clear guidance from the Minnesota Supreme Court, we hesitate to construe the limits of Minnesota's long-arm statute when the identical lawsuit is proceeding without jurisdictional problems in Wisconsin federal district court.
>
> For these reasons, we decline to rule on whether the district court erred in dismissing the complaint for lack of personal jurisdiction and dismiss the instant appeal with prejudice.

Id.

As in Orthmann, the parties vigorously dispute whether this Court has personal jurisdiction over Defendants, while the parties do not question whether the California federal district court has personal jurisdiction. In addition, the case in California is further along, as discovery has begun and the parties have agreed to participate in private mediation after resolution of potentially dispositive motions. (Sec. Elsass Dec., [Docket No. 31]). Because of these circumstances and the guidance provided in Orthmann by the Eighth Circuit's decision to apply the first-filed rule without first resolving the question of personal jurisdiction, this Court similarly declines to here address the issue of personal jurisdiction, as the first-filed rule clearly

warrants transfer of the present case to the United States District Court for the Northern District of California, for the reasons to be set forth below.

Defendants argue that this Court should either dismiss the present case or transfer it to the Northern District of California because the California case was the first case filed involving the dispute and claims in the two cases. (Mem. in Supp., [Docket No. 10], 5-8). At the January 23, 2017, Motion Hearing, Scarlett agreed that the California case was filed first, although Scarlett argued that the Court should consider the fluidity of the first-filed rule and determine that the date of service controls, not the date of filing. (Jan. 23, 2017, Motion Hearing, Digital Record, 10:26-27). Although the Eighth Circuit has not spoken directly to the question of whether service or filing is the point at which jurisdiction is established for purposes of the first-filed rule, federal courts have "long held that jurisdiction attaches upon the filing of the complaint and not the service of it." See, Med-Tec Ia., Inc. v. Nomos Corp., 76 F. Supp. 2d 962, 970 (D. N.D. Ia. 1999) (surveying cases from multiple jurisdictions).

In addition, federal district courts in Minnesota have held that filing a complaint is the pivotal action with respect to the first-filed rule. See, Twin Cities Gaming Supplies, Inc. v. FortuNet, Inc., No. 9-cv-2290 (ADM/JJK), 2010 WL 391291, *2-3 (D. Minn. Jan. 25, 2010); ABC Teacher's Outlet, Inc. v. Sch. Specialty, Inc., No. 7-cv-159 (DWF/SRN), 2007 WL 2122660, *2-3 (D. Minn. July 17, 2007); Fed. Cartridge Co. v. Remington Arms Co., Inc., No. 3-cv-6105 (ADM/AJB), 2003 WL 23101805, *2 (D. Minn. Dec. 31, 2003). Similarly, the Eighth Circuit has not defined the analysis to be used, when (as here), one of the cases was first filed in State court and then removed to federal court, but at least one court within this federal district has held that "[w]here the first-filed suit is commenced in state court and thereafter removed to federal court, the date of the filing in state court is the operative date for determining which court

first established jurisdiction." See, Elliott Auto Supply, Co. v. Gen. Parts Distrib. LLC, No. 12-cv-1185 (RHK/TNL), 2012 WL 3428969, *2 (D. Minn. Aug. 14, 2012).

Under the aforementioned case law, the California case was the first filed. Thus, in the present case, for purposes of the first-filed rule, this Court concludes that the complaint in the California case was filed first.

However, Scarlett argues that certain red flags should persuade this Court to refrain from applying the rule. (Mem. in Opp., [Docket No. 19], 29-34). As set forth above,

> Courts are alert to two "red flags" that suggest such compelling circumstances exist: first, if the party that filed the first suit was "on notice" that the other party intended to file its lawsuit imminently, and second, if the first lawsuit was an action for declaratory judgment, which "may be more indicative of a preemptive strike than a suit for damages or equitable relief."

Everest Indem. Ins. Co., 2016 WL 4007578, at *4 (citations omitted).[1]

Scarlett asserts that both of these red flags are present here and justify abrogation of the first-filed rule. He first argues that when Defendants filed suit in California, Defendants had notice that Scarlett imminently intended to file suit against them. (Mem. in Opp., [Docket No. 19], 31-32). In support, Scarlett has filed a Declaration in which he states that after his

---

[1] Defendants argue that both red flags must be present for this Court to abrogate the first-filed rule, while Scarlet contends that abrogation requires the presence of only one red flag. (Jan. 23, 2017, Motion Hearing, Digital Record, 10:03-05, 10:31-32). This Court finds that both parties misconstrue the significance of the "red flags." The Eighth Circuit first articulated these two "red flags" as signals that there "may be compelling circumstances" to support abrogation of the first-filed rule. NW. Airlines, Inc., 989 F.2d at 1007 (emphasis added). By identifying these "red flags," the Eighth Circuit did not define an exclusive list of circumstances required to show such compelling circumstances. Instead, the Eighth Circuit identified these circumstances as two potential indicators ("red flags") that circumstances exist which may justify abrogation. See, Id. at 1006-07; see, also Foreign Candy Co., Inc. v. Promotion in Motion, Inc., 953 F. Supp. 2d 934, 942 (D. N.D. Ia. 2013) (recognizing that "[n]o firm list of what factors constitute compelling circumstances exists"); CBS Interactive Inc. v. Nat'l Football League Players Ass'n, Inc., 259 F.R.D. 398, 408-09 (D. Minn. 2009) (identifying notice of intention to sue and a suit primarily seeking declaratory relief as "[t]wo 'red flags' that might signal" compelling circumstances) (emphasis added). Thus, while the presence of these red flags alerts courts to the possibility of compelling circumstances that abrogate the first-filed rule, their existence is not necessarily dispositive either way in determining whether or not to apply the first-filed rule. See, Id. at 409 (declining to apply the first-filed rule where the parties were likely forum-shopping); Motorscope, Inc. v. Precision Tune, Inc., No. 12-cv-1296 (SRN/AJB), 2012 WL 4742278, *3 (D. Minn. Oct. 4, 2012) (listing compelling circumstances to decline to apply the first-filed rule as : (1) bad faith by first-filing party, (2) a race to the courthouse, and (3) declaratory judgment sought in first-filed suit); Riedell Shoes, Inc. v. Adidas AG, No. 11-cv-251 (MJD/AJB), 2011 WL 1868180, *5 (D. Minn. May 16, 2011) ("'[I]n the absence of bad faith, the mere presence of "red flags" does not necessarily warrant setting aside the first-to-file rule.'").

termination at the end of 2015, he "attempted to engage Ahn and White in discussions regarding the separation of our interests in the companies," but Ahn and White were largely unwilling to do so. (Scarlett Dec., [Docket No. 20], 9-10). In approximately May 2016, therefore, Scarlett retained legal counsel in Minnesota for assistance and, through that counsel, engaged in ultimately unsuccessful settlement discussions with Ahn. (Id. at 10). Eventually, Scarlett's counsel informed Ahn's counsel that the inability to agree upon a settlement "would leave litigation against her client Ahn and his company, [Cult of 8], as the only real option." (Id.). Accordingly in the summer of 2016, Scarlett hired "Minnesota litigation counsel." (Id.).

In addition, Scarlett further contends that during the first week of August 2016, he spoke with Troy Clements, a friend, business associate, and the owner of a wine distribution company that distributes Cult of 8 wines. (Id.). Scarlett maintains he informed Clements that he had retained counsel and intended to sue Ahn, White, and Cult of 8 in Minnesota because he felt he had no other alternative but to pursue litigation. (Id.). Scarlett also asserts that Clements has admitted that Clements then talked to Cult of 8's national sales manager, Brian Lewis, and informed Lewis that Scarlett intended to sue; Clements also reported that Lewis later said he discussed Clements' information with Ahn. (Id. at 11). However, Clements has refused to provide an affidavit reiterating these events, and he has not responded to an email from Scarlett attempting to memorialize Scarlett and Clements' purported relevant conversations. (Id.).

For their part, Defendants have provided the Court with a Declaration from Cult of 8 sales manager Brian Lewis. (Lewis Dec., [Docket No. 23]). Lewis states that on August 17, 2016, he had a conversation with Clements in which Clements related a conversation he had with Scarlett in which Scarlett stated he "was about to start a lawsuit" against Defendants. (Id. at 1 (the quoted language is Lewis' description of Clements' statements)). Defendants had already

filed suit in California state court on August 11, 2016, and Lewis states that the subsequent August 17, 2016, conversation with Clements was the first time Lewis learned about Scarlett's plans to initiate a lawsuit. (Id. at 2; Elsass Dec., Exh. A, [Docket No. 11-1], 8). Lewis also asserts that he does not recall any reference to a specific court or state in which Plaintiff intended to file suit. (Lewis Dec., [Docket No. 23], 2). Lewis avers that he spoke with Ahn the following day and relayed his conversation with Clements, and Ahn informed Lewis that he and White had already filed suit in California. (Id.).

Cases in which courts have found notice of imminent litigation to justify abrogation of the first-filed rule involve more definite indicators of notice and a race to the courthouse than are demonstrated herein. For example, in Daikin Applied Americas Inc. v. Kavlico Corp., 111 F. Supp. 3d 961, 965 (D. Minn. 2015), the parties participated in mediation, during which the plaintiff informed the defendant that it intended to file suit in Minnesota if the mediation was unsuccessful, and the day after the unsuccessful conclusion of the mediation, the defendant filed suit in California. In the later-filed Minnesota suit, the Minnesota Federal District Court rejected the defendant's subsequent motion to apply the first-filed rule and transfer the case to California, finding that the evidence that the defendant "both raced to the courthouse and was aware the [plaintiff] intended to file suit against it in Minnesota" warranted abrogation of the first-filed rule. Id. See, also, Fed. Cartridge Co. v. Remington Arms Co., Inc., 2003 WL 23101805, at * 3 (applying first-filed rule where the "[d]efendants were on notice of likely litigation by Federal Cartridge if they did not respond to the cease and desist letter by the specified date" and the defendants had been notified "that Plaintiff's counsel were authorized to pursue all legal remedies unless Defendants responded favorably by such date").

Considering the Declarations currently before this Court, there is insufficient evidence of the first red flag—an improper "race to the courthouse"—to independently justify abrogation of the first-filed rule. There is no clear evidence that Defendants knew that Scarlett's litigation was imminent. Scarlett did not give Defendants a date-certain by which he planned to file suit, he did not share with Defendants a draft version of the complaint he anticipated filing, and he did not otherwise indicate to Defendants that litigation in Minnesota was imminent.

In addition, the record before this Court shows that Defendants attempted to serve Scarlett with the complaint and related papers in the California state court case on August 12, 2016, which was over 2 weeks before Scarlett filed suit in Minnesota. (Yates Dec., [Docket No. 15], 1). The address the process server had for Scarlett was no longer valid and, on August 17, 2016, service was attempted at a corrected address, which is a secured residence requiring admittance through a call box. (Id.). On August 24, 2016, the process server spoke with Jasmine Scarlett through the call box at Scarlett's residence and was informed that Jasmine Scarlett was not at the residence but would call Scarlett to see if he was there. (Id. at 2). When the process server spoke with Jasmine Scarlett approximately 5 minutes later, she stated that she had been unable to reach Scarlett. (Id.). Scarlett was not successfully served until on September 20, 2016. (Id.). He filed his Complaint in the present case on August 30, 2016. (Compl., [Docket No. 1]).

There is again no clear evidence before the Court that the length of time it took to serve Scarlett with the California case complaint was the result of bad faith or of an attempt to file in California first and keep the California case secret for leverage in later negotiations or to preempt Scarlett's choice of forum if he later filed suit. See, Hearth & Home Technologies, Inc. v. J & M Distributing, Inc., No. 12-cv-686 (SRN/TNL), 2012 WL 5995232, *5 (D. Minn. Nov. 30, 2012) (recognizing indications of bad faith that might justify abrogation of the first-filed rule). There is

simply no indication that Defendants initiated the California litigation as an improper preemptive strike against Scarlett or in an improper "race to the courthouse" that would justify abrogation of the first-filed rule.

The Court also considers the existence of the second red flag which Scarlett asserts justifies this Court declining to apply the first-filed rule: *i.e.,* "[T]he first lawsuit was an action for declaratory judgment, which 'may be more indicative of a preemptive strike than a suit for damages or equitable relief.'" See, Everest Indem. Ins. Co., 2016 WL 4007578, at *4 (citations omitted). Scarlett attempts to avoid the additional claims in the California lawsuit (other than the request for declaratory judgment) by characterizing them as "at best, cursory attempts to establish jurisdiction in California."[2] (Mem. in Opp., [Docket No. 19], 33).

Defendants concede that the California complaint contains a claim for declaratory relief concerning ownership of Cult of 8 and ABV, but they also accurately note that the claim is consistent with one of the disputes in the instant case as well, in which Scarlett too requests declaratory relief stating that "Ahn has no ownership interest or stock in ABV." (Mem. in Supp., [Docket No. 10], at 7; see, Compl., [Docket No. 1], 30). In addition, Defendants note that the California complaint does also include claims for damages for breach of fiduciary duty or, in the alternative, for fraud in the inducement. (Mem. in Supp., [Docket No. 10], 8; Elsass Dec., Exh. A, [Docket No. 11-1], 13-14).

As Defendants note, there is nothing inherently suspect about pursuing declaratory judgment. (Jan. 23, 2017, Motion Hearing, Digital Record, 10:04-05). In Clergy Financial, LLC v. Clergy Financial Services, Inc., 598 F. Supp. 2d 989, 994 (D. Minn. 2009), the District Court

---

[2] Scarlett also argues that because his Complaint in the present case contains 17 "substantive claims," as opposed to the three in the California complaint, he is clearly "the appropriate Plaintiff in this dispute." (Mem. in Opp., [Docket No. 19], 33). Scarlett cites no legal authority, nor has this Court's independent research uncovered any, for the proposition that the number of claims in each lawsuit is relevant to analysis of cases under the comity-driven first-filed rule.

rejected the defendant's argument that a request for declaratory judgment was enough, in and of itself, to justify refusal to apply the first-filed rule. The Clergy Financial, LLC court stated: "Although Plaintiff does seek a declaratory judgment, it also seeks injunctive relief and damages. Thus, without commenting on the merits of Plaintiff's case, the face of Plaintiff's Complaint is enough to satisfy the Court that Plaintiff is a 'true' plaintiff" and did not simply file suit in order to make a preemptive strike against anticipated litigation. See, Id. Similarly, another District Court found there were no compelling circumstances to deviate from the first-filed rule where, although the first-filed case requested only declaratory relief, the plaintiff in that case "outlined several reasons why declaratory relief is necessary in this case." Hearth & Home Technologies, Inc., 2012 WL 5995232, at *5.

The same principal applies in the present case. In the California case, Ahn and White seek declaratory judgment (on the same issue on which Scarlett seeks declaratory judgment in the case presently before this Court), but they also seek damages and/or recission of the transfer of certain trademarks. (See, Elsass Dec., Exh. A, [Docket No. 11-1], 15). Therefore, the California case does not fit within the class of cases that seek only declaratory relief and by doing so raise a red flag that might convince this Court to abrogate the first-filed rule. See, Motorscope, Inc. v. Precision Tune, Inc., No. 12-cv-1296 (SRN/AJB), 2012 WL 4742278, *4 (D. Minn. Oct. 4, 2012) (noting that the request in the first-filed case for declaratory judgment did not compel departure from the first-filed rule because the complaint in the first-filed case sought "more than just declaratory relief"). Accordingly, Plaintiff has failed to show the existence of any circumstance which would warrant departure from application of the first-filed rule.

"In applying the first-filed rule, courts have the discretion to dismiss, stay, or transfer the later-filed action." Conrad v. Colvin, No. 14-cv336 (DWF/HB), 2015 WL 4094244, *4 (D.

Minn. July 5, 2015). See, also, Slidell, Inc. v. Archer Daniels Midland Co., No. 02-cv-4841 (MJD/JGL), 2003 WL 22050776, *4 (D. Minn. Sept. 2, 2003) ("Pursuant to the first-filed rule, a district court has the discretion to dismiss the later action, . . . or transfer it if an action involving the same parties and issues was earlier-filed in a different district"). Defendants clarified at the January 23, 2017, Motion Hearing that, if the Court grants relief under the first-filed rule, Defendants request transfer, not dismissal. (Jan. 23, 2017, Motion Hearing, Digital Record, 10:11-13). In addition, Defendants represented to the Court at the Motion Hearing that no one is disputing jurisdiction in the California case and that they anticipate all claims being pursued in California if Scarlett's claims do not continue before this Court. (Id. at 10:14-15). In light of these circumstances, the Court sees no reason to dismiss the case altogether, finding that transfer better serves the interests of justice.

Because the California case was filed prior to the case before this Court and there are no compelling circumstances present to justify departure from the first-filed rule, this Court recommends **granting in part** Defendants' Motion to Dismiss or in the Alternative to Transfer the case to the Northern District of California, [Docket No. 9], under the first-filed rule, and **denying in part as moot** the Motion to the extent that it requests relief based on a lack of personal jurisdiction or a forum non conveniens arguments.

### III.   CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

Defendants' Motion to Dismiss or Transfer, [Docket No. 9], be **GRANTED in Part, DENIED in Part as Moot,** and the case be **TRANSFERRED** to the Northern District of California**.**

Dated: February 22, 2017                  s/Leo I. Brisbois
                                                        The Honorable Leo I. Brisbois
                                                        United States Magistrate Judge

**N O T I C E**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]" A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.